UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALERIE L. FLORES,<br><br>      Plaintiff,<br><br>-against-<br><br>DISCOVER FINANCIAL SERVICES;<br>DISCOVER CARD; ILLINOIS HUMAN<br>RIGHTS COMMISSION,<br><br>      Defendants. | 24-CV-5331 (LTS)<br><br>ORDER OF DISMISSAL<br>WITH LEAVE TO REPLEAD |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action alleging that she has been discriminated against in violation of her rights under federal law. By order dated December 23, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis*, that is, without prepayment of fees.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are drawn from the complaint. Plaintiff contends that Defendants Discover Financial Services and "Discover Card" discriminated against her, in violation of her civil rights, by denying her a personal loan that would have allowed her to "consolidate all [of her] debts into the personal loan and pa[y] off the Discovery Card completely." (ECF 1 at 3.) Plaintiff states that she has applied "for a personal loan almost every 6 months since February 2020," and that these "multiple inquiries" are "also bringing down [her] credit score." (*Id.* at 2, 4.)

When she last applied for a loan, in summer 2023, she had "a fairly good credit score." (*Id.* at 4.) Plaintiff "filed a complaint with the Illinois Human Rights Commission (IHRC) as at that time [her] credit qualified" her for a loan, in her view. (*Id.* at 2.) The IHRC "had a second

2

person listening on the phone call due to a perceived mental disability. . . ." (*Id.* at 3.) Plaintiff also makes stray remarks, apparently unrelated to the claims against Defendants: "My last name is Flores but [I] have no relation nor affiliation with David Flores who has committed murder on someone (female) with the last name Davis." (*Id.*)

Plaintiff believes that Defendants "retaliated on [her] when [she] made a large payment but needed to reverse it & just make the minimum payment." (*Id.* at 3.) At some point, Plaintiff's credit limit was reduced. Discover eventually reported to the credit bureau that the balance on Plaintiff's Discover Card exceeded her credit limit by $1800. (*Id.*)

Plaintiff alleges that she is currently detained in an unidentified facility but that she resides in New York.[1] Plaintiff seeks damages and "to repair [her] credit score."

## DISCUSSION

The Court understands Plaintiff to be making three claims against Defendants Discover Financial Services and "Discover Card." The first claim is that, despite Plaintiff's "fairly good" credit score, Discover Financial Services failed to extend to her a $35,000 unsecured loan, which would have allowed her to pay off other debts. Second, the credit limit on Plaintiff's Discover Card was lowered after she made a large payment but then had to "reverse" it and make only the minimum payment. Third, one or both Defendants reported to the consumer reporting agencies that the balance on her credit card exceeded her credit limit.

**A.     Denial of loans**

Turning to Plaintiff's first claim, about the failure to extend her a loan, Plaintiff, who is proceeding *in forma pauperis*, does not include any facts suggesting that the loan decision was

---

[1] Plaintiff uses a mailing address a post office box in Albany, New York, from the domestic violence address confidentiality program.

3

based on non-financial matters. The fact that Plaintiff's credit score was, in her view, "fairly good," does not obligate Defendants to extend a loan without consideration of other relevant factors, such as her income, liabilities, assets, and ability to repay a loan. Plaintiff does not identify any federal statute that Defendants violated in refusing to extend her a $35,000 loan, and the facts alleged do not suggest that the denial of a loan violated any federal right of which the Court is aware. The allegations of the complaint thus fail to state a claim on which relief can be granted in connection with the denial of a loan.

**B.    Decreasing credit limit**

Plaintiff's second claim is that, when she was only able to make minimum payments on her card, her credit limit was lowered. The Equal Credit Opportunity Act defines "a change in the terms of an existing credit arrangement" as an "adverse action." 15 U.S.C. § 1691(d)(6). A creditor must notify the person affected by an adverse action, 15 U.S.C. § 1691(d)(1), and if the person affected, within 60 days thereafter, requests a statement of reasons, the creditor must provide such a statement within 30 days, 15 U.S.C. § 1691(d)(2)(B). Put another way, the ECOA does not limit a creditor's ability to lower the credit limit on a credit card; it merely imposes limited notification obligations on the creditor. Other federal laws may also require notice of a such a change.[2]

---

[2] The Credit Card Accountability Responsibility and Disclosure Act of 2009 (Credit CARD Act) requires advance notice for certain changes to some credit card accounts:

> In the case of any credit card account under an open end consumer credit plan, a creditor shall provide a written notice of any significant change, as determined by rule of the Bureau, in the terms (including an increase in any fee or finance charge, other than as provided in paragraph (1)) of the cardholder agreement between the creditor and the obligor, not later than 45 days prior to the effective date of the change.

Here, although Plaintiff challenges the decision to decrease her credit limit, she makes no allegation that Defendants failed to notify her of the decrease in her credit limit. Plaintiff thus fails to state a claim for a violation of her rights in connection with the decrease in her credit limit.

C.     **Furnishing information to consumer reporting agencies**

Plaintiff contends that Defendants reported to consumer reporting agencies (CRAs) that her use of credit exceeded the limit on her credit card. The FCRA imposes two main duties on furnishers of information: (1) a duty to provide accurate information, 15 U.S.C. § 1681s-2(a); and (2) a duty to investigate after receiving a notice of dispute, 15 U.S.C. § 1681s-2(b). Violations of the duty to provide accurate information, Section 1681s–2(a), are enforced by certain government officials – not consumers themselves. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]here is no private cause of action for violations of § 1681s-2(a)."); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 79 (W.D.N.Y. 2018) ("There is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials."); 15 U.S.C. § 1681s-2(d) (stating that subsection (a) of the FCRA "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title").

By contrast, an individual can sue a furnisher of information for violations of the duty to investigate. *See Comunale*, 328 F. Supp. 3d at 80 (holding that the FCRA "does provide for a private cause of action pursuant to § 1681s-2(b)"). The investigation duties under Section 1681s-2(b) arise only after the furnisher of financial information receives notice of the consumer's dispute from the CRA. "To state a claim [under § 1681s-2(b)(1)], a consumer must show that (1) a furnisher

---

15 U.S.C. § 1637(i)(2). Plaintiff does not provide information about her credit card account or state whether it is an open ended consumer credit plan.

5

received notice of a credit dispute from a [CRA] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148 (FPG), 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019).

Here, Plaintiff makes no allegation that she contacted the CRA in connection with the information that Defendants furnished or that she requested an investigation. Plaintiff's allegations that Defendants accurately reported to the CRA that her credit utilization exceeded the limit on her credit card do not state a claim for a violation of her rights under the FCRA.

**D.     Illinois Human Rights Commission**

Plaintiff alleges that the Illinois Human Rights Commission (IHRC) "had a second person on the phone listening" when she called to make a complaint about her loan being denied even though, in her view, her "credit qualified" her for a loan. (ECF 1, at 2-3.)[3] Plaintiff states, without elaboration, that the IHRC did so "due to a perceived mental disability." (*Id.* at 3.) Plaintiff does not allege that IHRC took any adverse action against her or plead facts about why she believes that she was regarded as having a mental disability. These allegations thus fail to comply with Rule 8 because Plaintiff does not provide enough factual detail to put the defendant on notice of her claim.

Insofar as Plaintiff could be understood as bringing a civil rights claim, under 42 U.S.C. § 1983, the IHRC, like the New York State Division of Human Rights (NYSDHR) is an arm of the state for the purposes of the Eleventh Amendment. *See*, *e.g.*, *McGill v. Buzzelli*, 828 F. App'x

---

[3] It is unclear why Plaintiff would report this alleged violation in Illinois if, as she asserts, she was domiciled in New York at the time. Even if Plaintiff could state a claim against the IHRC, under the general venue provision, venue would not appear to lie in this district. 28 U.S.C. § 1391(b).

76, 78 (2d Cir. 2020) (summary order) ("To the extent [plaintiff] sought damages from the NYSDHR for its purported mishandling of his complaints, the Eleventh Amendment bars suits against it because it is a state agency."). States generally may not be sued in federal court unless "they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*.

Illinois has not waived its Eleventh Amendment immunity to suit in federal court. *See Richman v. Sheahan*, 270 F.3d 430, 439, 440 (7th Cir. 2001). Moreover, Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Any Section 1983 claims that Plaintiff is bringing against the IHRC are therefore barred by the Eleventh Amendment and cannot proceed in federal court.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because it is unclear whether Plaintiff may be able to allege additional facts to address the deficiencies identified herein, the Court grants Plaintiff 30 days' leave to amend her complaint to replead her claims.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:  March 6, 2025
        New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge